# KANSAS CITY SOUTHERN RAILWAY COMPANY
## *v.* UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 154.   Submitted January 19, 1920.—Decided March 1, 1920.

A railroad company which enters into a contract to carry the mails "upon the conditions prescribed by law," etc., is liable to fines or deductions from its compensation for failures to maintain its mail train schedules (Rev. Stats., §§ 3962, 4002; Act of June 26, 1906, c. 3546, 34 Stat. 472).   P. 149.

The fact that the Post Office Department long abstained from making such deductions under Rev. Stats., § 3962, where delays were less than 24 hours, does not amount to construing that section as inapplicable to shorter delays.   P. 150.

And in any event, the right to such a construction could not be claimed by a company whose contract was made soon after the Postmaster General had issued an order for deductions in future when trains arrived fifteen or more minutes late a designated number of times

per quarter, and soon after the approval of the Act of June 26, 1906, *supra,* directing him to impose and collect reasonable fines for failure of railroads to comply with their contracts respecting the times of arrival and departure of trains. P. 150.

53 Ct. Clms. 630, affirmed.

THE case is stated in the opinion.

*Mr. Alex. Britton* and *Mr. Evans Browne* for appellant.

*Mr. Assistant Attorney General Spellacy, Mr. Leonard B. Zeisler* and *Mr. Charles H. Weston,* Special Assistants to the Attorney General, for the United States.

*Mr. Benjamin Carter,* by leave of court, filed a brief as *amicus curiæ.*

MR. JUSTICE CLARKE delivered the opinion of the court.

The appellant, in its petition, alleges: That in June, 1906, it entered into contracts with the Post Office Department to transport the mails over three designated routes "upon the conditions prescribed by law and the regulations of the Department applicable to railroad mail service;" that during the fiscal year 1907 (the petition was not filed until December 19, 1912), the Department withheld from its stipulated pay $3355.48, "as a penalty imposed on account of late arrivals of . . . trains and failure to perform service on the . . . mail routes," and that such deductions were "unlawfully withheld." The prayer was for judgment for the full amount of the deductions,—which are also designated in the record as fines or penalties. The petition was dismissed by the Court of Claims.

The appellant acquiesced in the deductions when they were made, accepted the reduced compensation without protest or objection, except in one instance, when the item complained of was adjusted to its satisfaction, and continued to perform the contracts to the end of their

four-year periods without complaint as to the reasonableness of the deductions involved. And thus it comes admitting that it freely entered into the contracts, fully performed them and accepted pay for such performance, but asking judgment for deductions which it avers were "unlawfully withheld" more than five years before the petition was filed.

The contracts were of the type, familiar in many reported cases, evidenced by "distance circulars," orders establishing the routes, specific agreements on the part of the contractor that it would perform the service "upon the conditions prescribed by law and the regulations of the Department applicable to railroad mail service" and that the "adjustment" should be "subject to future orders, and to fines and deductions."

Among the applicable "conditions prescribed by law" were: Rev. Stats., § 3962, that the Postmaster General might "make deductions from the pay of contractors, for failures to perform service according to contract, and impose fines upon them for other delinquencies"; Rev. Stats., § 4002, authorizing contracts for the conveyance of the mails "with due frequency and speed"; and the Act of June 26, 1906, c. 3546, 34 Stat. 467, 472, commanding the Postmaster General to require all railroads carrying mail to comply with the terms of their contracts "as to time of arrival and departure of said mails" and "to impose and collect reasonable fines for delay" when not caused by unavoidable accidents or conditions.

It is conceded by the appellant that the Postmaster General had authority under Rev. Stats., § 3962, to make deductions from the pay when a "trip was not performed" within twenty-four hours of the stipulated time for performance. But it is contended that he had no authority to make deductions or impose fines for shorter delays,— and this is the sole question upon which this appeal is pursued into this court.

It is argued for the appellant: That power to make the disputed deductions must be found, if at all, in the provision of Rev. Stats., § 3962, that the Postmaster General may "make deductions from the pay of contractors, for failures to perform service according to contract, and impose fines upon them for other delinquencies"; that when the contracts were made, long departmental construction had limited the failure to perform service, described in the act, to twenty-four hours of delay in the arrival of trains; and that failure, from 1872, when the section was enacted, to 1907, to impose fines or deductions for shorter delays, amounted to a construction by the Department that authority to impose fines upon contractors for delinquencies did not warrant deductions for failure to maintain train schedules when the delay was less than twenty-four hours.

We need consider only this last contention, and in reply it is pointed out that the findings of fact show: that the amount and rates of compensation were determined by the Department for the various routes, between the 10th and 26th of September, 1906, though effective as of the first day of the preceding July; that in October, 1905, the Postmaster General, "on account of the  . . .  failures to observe the schedule on routes, or parts of routes," issued an order that deductions should be made, in sums stated, after December 31, 1905, when trains arrived at termini or junction points fifteen or more minutes late, a designated number of times in a quarter; and that the Act of Congress, approved June 26, 1906, referred to, declared it to be the duty of the Postmaster General to impose and collect reasonable fines for failure of railroads to comply with the terms of their contracts with respect to the time of arrival and departure of mails. This act was repealed in the following year, but the substance of it was immediately reënacted in a more adaptable form.

Thus, the appellant had notice before it made the con-

tracts under discussion that failure to maintain train schedules was regarded by Congress and the Department as a violation of mail-carrying contracts, justifying the imposition of fines or deductions, and that both believed there was authority under the customary contracts and the law to impose such deductions. The Act of June 26, 1906, was not a grant of new power to the Postmaster General to impose such fines or deductions, but was an imperative direction to him to exercise the power which, it assumes, he already had for that purpose.

This action of Congress and of the Department is sufficient answer to the claim, if it were otherwise sound, that failure to exercise the power to impose fines for such a cause amounted to a departmental declaration that no such power existed.

But the contention is not sound. Failure, within moderate limits, to maintain train schedules may well have been regarded by the Postmaster General as a necessary evil to be tolerated and not to call for the exercise of his power to impose fines under the statute, when more flagrant neglect to maintain such schedules might very justly require him to exercise such authority in order to prevent intolerable public inconvenience. We cannot doubt that the contracts of the appellant, and the law which was a part of them, furnished ample authority for the action of the Department in this case and that omission to exercise such power did not make against the proper use of it when, in the judgment of the Postmaster General, adequate occasion for its use should arise.

We need not pursue the subject further. The principles involved are adequately and admirably discussed by the Court of Claims in its opinion, rendered in the case of *Louisville & Nashville R. R. Co.* v. *United States,* 53 Ct. Clms. 238, upon authority of which this case was decided.

The judgment of the Court of Claims is

*Affirmed.*